IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CARLYDA KELLY,

     PLAINTIFF,

v.                                                              CIVIL ACTION NO.

ASPIRE PHYSICAL RECOVERY                   JURY TRIAL DEMANDED
AT HOOVER, LLC

     DEFENDANT.

## COMPLAINT

**I.   JURISDICTION**

     1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201 and 2202 and pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. District Court jurisdiction exists pursuant to 29 U.S.C. §§ 215(a)(3) and 217 and 28 U.S.C. § 1331. The jurisdiction of this Court is invoked to secure the protection and redress the deprivation of rights secured by the FLSA.

**II.   PARTIES**

     2.    Plaintiff, Carlyda Kelly (hereinafter "Plaintiff") is a resident of Bessemer, Jefferson County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case.

1

Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Southern Division.

3. Defendant, ASPIRE PHYSICAL RECOVERY (hereinafter "Defendant"), is a company registered and doing business in the State of Alabama. Therefore, this Court has personal jurisdiction over Defendant. Defendant is engaged in commerce from the production of goods as contemplated by 29 U.S.C. §§ 203(r), 203(s).

### III. STATEMENT OF FACTS

4. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-3 above.

5. Defendant hired Plaintiff on or about April 26, 2009.

6. Defendant terminated Plaintiff's employment on February 16, 2015.

7. At the time of Plaintiff's termination, Defendant labeled Plaintiff's job title as that of "Director of Finance."

8. Defendant's Executive Administrator, Jamie Popee, supervised Plaintiff.

9. Popee served as Defendant's top management official at the facility in which Plaintiff worked.

10. Erica Ashford served as the Defendant's Regional Financial Specialist, overseeing the work of Aspire's Finance Directors

11. Popee reported to one of Defendant's Regional managers, Zeb Landers.

12. On or about, November 1, 2016, the Department of Labor came to the Aspire facility to conduct an onsite investigation of Defendant's wage and hour practices.

13. Prior to the meeting, Defendant called Plaintiff into the office and informed her that she may be interviewed by the Department of Labor.

14. During the meeting, the attorney and Jamie Popee reviewed Plainitff's job description with her.

15. Defendant's attorney and Jamie Popee asked Plaintiff if she had any questions about what her job duties were.

16. Later that day, the Department of Labor's investigator called Plaintiff for an interview.

17. During the meeting, Plaintiff responded accurately and truthfully about her working conditions.

18. After the Department of Labor investigation, Defendant began to retaliate against plaintiff.

19. For example, Defendant denied Plaintiff the bonus she had earned for the fourth quarter of 2016.

20. Prior to participating in the investigation, Plaintiff had received her increases as earned.

21. When Plaintiff inquired as to why she had not received her bonus, Ashford told Plaintiff that her days in collection for that quarter averaged 45 and the goal was below 35.

22. During the phone conference, Ashford explained that she had not received the bonus because her days in collection had increased.

23. In fact, when Plaintiff calculated the days for the fourth quarter, her days in collection had decreased to 42.

24. In contrast, in the quarter preceding her participation in the investigation, Defendant paid the bonus to Plaintiff and her days in collection averaged 44.

25. On or about April 6, 2017, the Department of Labor issued findings that Defendant had violated the FLSA by classifying Plaintiff as an exempt employee.

26. On April 7, 2017, Defendant placed Plaintiff on suspension without pay for an alleged HIPAA violation because she allegedly sent patient information to one of the insurance providers on one occasion.

27. Another employee, Catherine Shephard, on several occasions, had also sent patient information to the providers.

28. During the meeting to discuss the alleged violation, Jan Stewart, Vice President of Human Resources and Anita Hemms, Compliance HIPAA officer said that they had spoken to Shephard.

29. Defendant did not suspend Shephard.

30. On April 13, 2017, Plaintiff returned to work from the unpaid suspension.

31. On Friday morning, Plaintiff had to leave work early because of a death in the family,

32. On Monday, April 17, 2017, Plaintiff returned to work.

33. Upon return, Stewart and Popee brought Plaintiff into the meeting and asked her not to bring her cell phone.

34. During the meeting, Stewart and Poppee questioned Plaintiff about payroll documents that she had printed from her email.

35. During the meeting, Plaintiff acknowledged that she had printed the emails.

36. In response, Defendant suspended Plaintiff again without pay.

37. On Wednesday, April 19, 2017, Stewart terminated Plaintiff's employment saying that the company could no longer trust her because she had printed the payroll documents that she had access to in the course of her duties as Finance Director.

5

## IV.   COUNT ONE – FLSA – Overtime Violations

38.   Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-37 above.

39.   During the three years preceding the filing of this complaint, Plaintiff regularly worked over forty hours in a work week.

40.   During the three years preceding the filing of this complaint, Defendant did not pay Plaintiff one and one-half times his regular hourly rate of pay for hours worked in excess of forty in a work week.

41.   During the three years preceding the filing of this complaint, Plaintiff's primary job function was to personally conduct billing and collections for the activities for the defendant.

42.   Although Plaintiff's Department consisted of herself and two other non-exempt employees, Plaintiff did not, as a practical matter, manage or supervise them.

43.   Plaintiff did not manage the day to day work of the non-exempt staff.

44.   Plaintiff did not have the ability to hire employees.

45.   Plaintiff did not have the ability to fire employees.

46.   Plaintiff did not have the ability to discipline employees.

47. Defendant's management prohibited Plaintiff from approving the non-exempt employees' time off requests or from approving a lower paid employee to perform higher paying job duties without special permission.

48. Defendant's management generally ignored Plaintiff's recommendations regarding the discipline of employees.

49. Plaintiff's primary job duties were to do data entry on patient financial records, collect payment on patient accounts, greet patients and their families, and to explain the billing process.

50. Defendant typically required Plaintiff to work 60-90 hours per week.

51. At times, Plaintiff worked 12-15 hours per day, six days per week.

52. Defendant required Plaintiff to work the job duties of hourly paid, non-exempt employees who were absent from their shift, as well as allowing Defendant to lower its labor cost by not hiring sufficient numbers of non-exempt personnel to perform non-exempt job duties.

53. Plaintiff did not exercise discretion in the performance of what work was to be performed on a given work day, as such decisions were made by Defendant's upper management.

54. Plaintiff had no authority to hire, fire or discipline employees of her own accord, and recommendations made to Defendant's management were usually ignored.

55. Plaintiff devoted less than 20% of her working to management duties.

56. When Plaintiff complained to Erica Ashford and Jamie Popee regarding the hours she was having to work to meet the production requirements, Popee and Ashford told Plaintiff that some of her responsibilities would be given to the two non-exempt employees, but left others to be completed by Plaintiff.

57. At no time was Plaintiff the top management person working during her shift.

58. Defendant misclassified Plaintiff as an exempt employee under the FLSA.

59. Plaintiff's primary job duty was the performance of non-exempt job duties, and not managerial duties

60. Defendant's actions in misclassifying Plaintiff an as exempt employee was a willful and intentional violation of the FLSA, resulting in Plaintiff's loss of overtime pay.

V.   **COUNT II FLSA RETALIATION - TERMINATION**

61. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-61 above.

62. Defendant intentionally violated the FLSA by failing to pay Plaintiff for overtime hours worked without any basis in fact to do so.

63. In early November 2016, Plaintiff met with an investigator with the United States Department of Labor concerning potential wage and hour violations committed by Defendant.

64. During that meeting, Plaintiff responded truthfully and provided information in good faith.

65. Within weeks of engaging in that protected activity, Defendant denied Plaintiff a bonus which she had earned.

66. Other employees who had not participated in the Department of Labor's investigation received their bonuses as usual.

67. Defendant retaliated against Plaintiff by failing or refusing to pay the bonus for which Plaintiff was entitled.

68. On or about April 6, 2017, The Department of Labor met with Defendant's representatives and informed them that it believed that the company, had in fact violated the Fair Labor Standards Act.

69. On or about April 7, 2017, Defendant suspended Plaintiff for an alleged HIPAA violation.

70. Other employees who had also committed the same alleged violation, who had not participated in the Department of Labor's investigation were not suspended for the same alleged conduct.

71. On or about April 19, Defendant, citing a lack of trust, terminated Plaintiff's employment for printing documents which she had access to in the regular course and scope of her duties.

72. Defendant retaliated against Plaintiff by terminating her employment because she participated in Department of Labor investigation of Defendant's wage and hour practices.

73. Defendant's actions in terminating Plaintiff violated the FLSA.

74. As a result of Defendant's willful and intentional violation of the FLSA, Plaintiff has suffered loss of pay, benefits, and other compensatory damages.

## VI.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. The Court issue proper process to compel Defendant to answer or otherwise plead to the allegations contained in the Complaint;

B. This Court award Plaintiff the amount of his back overtime pay, plus an additional equal amount as liquidated damages; front pay, compensatory damages, nominal damages; and special damages;

C. That Plaintiff be granted judgment against Defendant for all reasonable attorneys' fees, costs, disbursements and interest; and

D. For such other and further relief as this Court deems equitable, proper and just.

_____
ALLEN D. ARNOLD

_____
KIRA FONTENEAU

OF COUNSEL:
FONTENEAU & ARNOLD, LLC
2151 Highland Avenue South, Ste. 205
Birmingham, Alabama 35205
(205) 252-1550 – Office
(205) 502-4476 – Facsimile

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_____
OF COUNSEL

**SERVE DEFENDANT AT:**

Aspire Physical Recovery at Hoover, LLC
c/o Edward R. Christian
420 North 20th Street, Suite 3400
Birmingham, AL 35203

11