FILED
2018 Jun-28 PM 03:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| CARLYDA KELLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:17-cv-00961-JHE |
| ) | |
| ASPIRE PHYSICAL RECOVERY AT ) | |
| HOOVER, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION[1]**

Plaintiff Carlyda Kelly ("Kelly" or "Plaintiff") and Defendant Aspire Physical Recovery Center at Hoover, LLC ("Aspire" or "Defendant") have jointly requested approval of their settlement agreement, which represents the resolution of a disputed matter under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). (Docs. 19 & 23). For the reasons set forth below, the court approves the parties' settlement.

**I. Background Facts**

On June 7, 2017, Kelly filed this action, asserting two FLSA counts. (Doc. 1). In Count I, Kelly alleges Aspire wrongfully classified her as an exempt managerial employee despite the fact she was not subject to the exemption and improperly denied her overtime compensation. (*Id.*). In Count II, Kelly alleges Aspire terminated her on a pretextual basis in retaliation for participating

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 12).

in a Department of Labor investigation of Aspire's practices. (*Id.*). On June 30, 2017, Aspire answered the complaint. (Doc. 7).

On May 16, 2018, Aspire and Kelly jointly submitted a motion for settlement approval and an attached settlement agreement. (Docs. 19 & 19-1). After initial review of the agreement, the undersigned held a telephone conference with the parties to discuss a pervasive release and a confidentiality provision contained in the agreement. Based on the discussion at the telephone conference, the undersigned ordered the parties to resubmit their agreement with specific modifications. (Doc. 21). On June 27, 2018, the parties did so, (doc. 23), and the undersigned has reviewed that agreement. Aspire has agreed to pay a total of $32,000.00 to Kelly. (*Id*. at ¶ 1). Of that amount, $1,562.00 is allocated to Kelly's Count I claim, (*id*. at ¶ 1.1.1); $1,562.00 is allocated as liquidated damages for Kelly's Count I claim, (*id*. at ¶ 1.1.2); and $12,626.00 is allocated to Kelly's Count II claim for emotional distress damages, (*id*.). The remaining $16,250.00 is allocated to Kelly's counsel for attorneys' fees and costs. (*Id*. at ¶ 1.1.3).

## II. Analysis

If an employee proves his employer violated the FLSA, the employer must remit to the employee all unpaid wages or compensation, liquidated damages in an amount equal to the unpaid wages, a reasonable attorney's fee, and costs. 29 U.S.C. § 216(b). "FLSA provisions are mandatory; the 'provisions are not subject to negotiation or bargaining between employer and employee.'" *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) (quoting *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982)). "Any amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in return for payment that is indisputably owed under the FLSA." *Hogan v. Allstate Beverage Co., Inc.*, 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011). Consequently, parties may settle an FLSA

2

claim for unpaid wages only if there is a bona fide dispute relating to a material issue concerning the claim.

In *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982), the Eleventh Circuit stated there is only one context in which compromises of FLSA back wage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. The primary focus of a court's inquiry in determining whether to approve an FLSA settlement is to ensure that an employer does not take advantage of its employees in settling their claim for wages and other damages due under the statute. *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 714, 719 (E.D. La. 2008).

This case presents the somewhat unusual scenario of an FLSA settlement that includes both a wage claim and a retaliatory termination claim. As stated above, there is no question that a district court is required to scrutinize for fairness the settlement of a claim for back wages brought pursuant to 29 U.S.C. § 216(b). *Lynn's Food*, 679 F.2d at 1353. However, *Lynn's Food* does not discuss judicial oversight of retaliatory termination claims. Accordingly, courts in this Circuit have generally concluded that an FSLA retaliatory discharge claim is not subject to the same review unless its terms contaminate any associated wage claim. *See, e.g., Hernandez v. Iron Container, LLC,* No. 13-22170-CIV, 2014 WL 633848, at *2 (S.D. Fla. Feb. 18, 2014); *Dunbar v. Wolf Bay Lodge, Inc.*, No. CV 15-00265-CG-M, 2015 WL 6394515, at *1 n.1 (S.D. Ala. Oct. 22, 2015); *Thompson v. Dealer Mgmt. Servs., Inc.*, No. 616CV1468ORL40KRS, 2016 WL 7644856, at *2 (M.D. Fla. Dec. 13, 2016), *report and recommendation adopted,* No. 616CV1468ORL40KRS, 2017 WL 37941 (M.D. Fla. Jan. 4, 2017).

The undersigned is satisfied that the settlement of the retaliatory discharge claim does not taint the settlement of the wage claim. First, Kelly's counsel has represented that resolution of the wage claim was negotiated separately from the retaliation claim. Second, the far greater monetary amount devoted to the retaliatory discharge claim reflects that it is the dominant claim in this action, with the wage claim representing a comparatively small portion of both the factual allegations in the complaint and Kelly's potential recovery. Finally, as discussed below, the undersigned finds the parties' resolution of the wage claim is fair on its face. Therefore, only the wage claim is analyzed below.

The parties' dispute as to the merits of the case is legitimate. Specifically, Kelly maintains she was misclassified as an exempt employee, while Aspire maintains that Kelly was not misclassified. (Doc. 19 at 1-2). The settlement is appropriate for the disputed wages. Kelly concedes she supervised other workers for part of the three-year time period prior to filing suit. To the extent it relates to wages, the settlement sum approximates the full amount of unpaid overtime for the time period after Kelly's supervisory duties were removed and an equal amount in liquidated damages. (*Id.* at 4). Because Kelly's supervisory authority potentially renders her an exempt employee for the portion of the relevant time period she held it, the undersigned finds this is an appropriate basis for Kelly's compromise of her wage claim and a reasonable resolution of the issue. Additionally, the parties were represented by counsel throughout the litigation and the negotiation of this settlement. Finally, Kelly's attorneys' fees for the wage portion of her claim were separately negotiated so as not to affect her recovery.[2] "Where the attorney's fee was agreed

---

[2] Kelly and her counsel entered into separate retainer agreements for the wage claim and for the retaliation claim, and copies of these agreements have been provided to the court for in camera review. Under the wage claim agreement, attorneys' fees and costs are negotiated

upon separately, without regard to the amount paid to the plaintiff, then 'unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.'" *Davis v. The Filta Group, Inc.*, 2010 WL 3958701, *2 (M.D. Fla. Sept. 20, 2010) (quoting *Bonetti v. Embarq Mgmt. Co.*, 2009 WL 2371407, *5 (M.D. Fla. Aug. 4, 2009)). Therefore, the undersigned finds the attorneys' fees are reasonable.

As originally presented, the parties' settlement agreement contained two provisions that concerned the undersigned. First, pursuant to a general release contained in the agreement, Kelly released Aspire from "any and all claims whatsoever of any kind or nature arising out of or in any way connected to (i) her employment with Aspire, (ii) the termination of her employment, and (iii) any other claim she may have arising from any event occurring prior to the date of this Agreement." (Doc. 19-1 at ¶ 2). The provision contains a non-exclusive list of potential causes of action Kelly released (e.g., claims under Title VII, the Equal Pay Act, ERISA, and state law). This is problematic because an employer may not "use an FLSA claim (a matter arising from the

---

separately from the settlement amount. Conversely, the retaliation claim agreement includes a contingency fee arrangement. Although contingency fee arrangements are disfavored in the Eleventh Circuit in FLSA <u>wage</u> actions, *see Silva v. Miller,* 307 F. App'x 349, 351 (11th Cir. 2009), as stated above, the retaliatory discharge claim is not subject to judicial review under the circumstances here, where there is no indication that the settlement of the retaliation claim contaminated the wage settlement. Additionally, the logic that suggests contingency fee arrangements are problematic in FLSA wage claims does not appear to apply to retaliation claims. *See id.* (noting the "language of the statute contemplates that 'the wronged employee should receive <u>his full wages plus the penalty</u> without incurring any expense for legal fees or costs.'") (citation omitted and emphasis added).

5

employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010).

Second, the agreement contained a confidentiality provision prohibiting Kelly from disclosing "the fact a settlement agreement has been reached and the terms of this Agreement . . . to anyone other than her attorneys, tax advisors, or as otherwise required by law." (Doc. 19-1 at ¶ 5). If asked, Kelly's only permitted response is that the case has concluded; any violation of this provision results in Kelly's obligation to pay $2,500.00 in liquidated damages. (*Id.*). However, "[a]bsent some compelling reason, the sealing from public scrutiny of FLSA agreements between employees and employers would thwart the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.' " *Hogan v. Allstate Beverage Co.*, 821 F. Supp. 2d 1274, 1283 (M.D. Ala. 2011) (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 708 (1945)). While an FLSA confidentiality provision is not per se unenforceable, a party seeking to include one must show compelling reasons why it should be upheld. *Briggins v. Elwood TRI, Inc.*, 3 F. Supp. 3d 1277, 1280 (N.D. Ala. 2014). Courts routinely strike these provisions. *Id.* at 1289 (collecting cases).

On June 13, 2018, the undersigned held a telephone conference to discuss these issues. At the telephone conference, the parties agreed to remove the confidentiality agreement and make the release mutual. The parties resubmitted their settlement agreement on June 27, 2018, with those modifications. (Doc. 23 at 4-9). The undersigned is satisfied that the agreed-upon changes resolve the potential fairness issues identified above. Specifically, the confidentiality provision has been removed entirely, and the mutual general release, (*id.* at ¶ 2), is no longer "a gratuitous . . . release of all claims in exchange for money unconditionally owed to the employee," *Moreno*, 729 F. Supp.

2d at 1351, because it releases any claims either party may have.  Therefore, the settlement is approved.

### III. Conclusion

The court finds Plaintiff's FLSA wage claim represents a bona fide dispute over FLSA provisions and the parties' monetary settlement is a fair and reasonable resolution of that bona fide disputes.  Therefore, the parties' motion for settlement approval, (doc. 19), as modified by the revised settlement agreement, (doc. 23), is **GRANTED**, and the revised settlement agreement is **APPROVED**.  A separate order will be entered.

DONE this 28th day of June, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE